IN THE UNITED STATES DISTRICT COURT
FOR THE UNITED STATES VIRGIN ISLANDS
BANKRUPTCY DIVISION

| | |
|---|---|
| IN RE: | |
| JEFFREY J. PROSSER, | Bankr. No. 3:06-30009 (MFW) |
| Debtor. | Chapter 7 |
| JAMES P. CARROLL, CHAPTER 7 TRUSTEE OF THE ESTATE OF JEFFREY J. PROSSER, | |
| Plaintiff, | |
| v. | |
| DAWN PROSSER | Adv. Pro. No. 11-03005 (MFW) |
| Defendant. | |

## OPINION[1]

Before the Court is the Motion to Compel Reimbursement filed by Jeffrey J. Prosser (the "Debtor") against the chapter 7 trustee of the Debtor's estate, James Carroll (the "Trustee"). For the reasons set forth below, the Court will deny the Motion.

I.  BACKGROUND

On July 31, 2006, the Debtor filed a chapter 11 bankruptcy petition. On October 4, 2007, the Debtor's case was converted to chapter 7, and the Trustee was appointed. On February 9, 2011,

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

the Court entered an order (in a separate adversary proceeding) directing the Debtor and his wife, Dawn Prosser ("Mrs. Prosser"), to turn over the Debtor's one-half interest in art work and furnishings. (Springel v. Prosser, 3:07-03010, D.I. 728.) The Court also imposed a constructive trust in favor of the Trustee for the benefit of the chapter 7 estate on certain of the Prossers' assets, including art work. (Id.)

On June 21, 2011, the Trustee commenced the above adversary proceeding against Mrs. Prosser seeking the authority to sell her interest in certain estate property. (Adv. D.I. 1.)[2] In that adversary proceeding, the Trustee filed a motion for an order authorizing the sale of certain personal property that was held by the Prossers as tenants by the entirety. (Adv. D.I. 2.) On October 7, 2011, the Court entered an order (the "Sale Order") granting that motion. (Adv. D.I. 26.) Among the assets covered by the Sale Order was a painting by Camille Pissarro (the "Painting").

Previously (in 2008), the Trustee had retained Christie's Inc. ("Christie's") as broker and auctioneer to value and sell certain assets of the estate. (D.I. 1454.) At that time, Christie's gave a preliminary estimate of the Painting's value,

---

[2]    References to the record are: "D.I. #" for pleadings from the main case; "Adv. D.I. #" for pleadings filed in Adv. Proc. No. 3:11-03005.

2

which ranged between $80,000 and $100,000.  (5/9/16 Tr. at 24-25; Ex. TC-10.)

In May 2011, the Trustee delivered the Painting to Christie's pursuant to a consignment agreement under which Christie's would auction the Painting.  (Ex. JP-50.)  Despite the entry of the Sale Order, in October 2011, Christie's decided to withhold the Painting from auction in order to conduct further research into the Painting's provenance.  (5/9/16 Tr. at 49-50.)  Christie's also reduced its estimate of the value of the Painting to $70,000 to $90,000.  (Ex. TC-9.)  On May 7, 2014, over two years after taking possession of the Painting, Christie's sent the Trustee a letter summarizing its research.  (Ex. TC-11.)  The Christie's letter traced the Painting's history and referenced certain risk factors associated with the Painting's presence in Europe during World War II.  (Id.)  Christie's concluded that there was a lack of information surrounding the circumstances under which one the Painting's previous owners sold the Painting in 1943.  (Id.)  While unable to locate any present-day claims, Christie's informed the Trustee it was "not confident that [Christie's] could convey good title to the [P]ainting were it now to be offered for sale."  (Id.)

After receiving the letter from Christie's, the Trustee solicited another auctioneer, Auction America, to sell the Painting.  (5/9/16 Tr. at 151.)  Auction America had been

3

previously retained by the Trustee to "auction and sell those items that are not sufficiently high-end to be sold by Christie's" and to "liquidate . . . less valuable miscellaneous Assets that cannot be sold by Christie's."  (D.I. 3444 & 3504.)

On April 18, 2014, the Trustee filed the Notice of Trustee's Auction of Debtor's Fine Art (the "Sale Notice").  (Adv. D.I. 128.)  The Sale Notice stated that Auction America would auction the Painting on May 14, 2014.  (Id.)  The Sale Notice did not mention the provenance-related issues identified in the letter from Christie's.

Auction America marketed the Painting via local newspapers, direct mail, e-mail, internet advertising, and personal phone calls.  (5/9/16 Tr. at 151.)  The letter from Christie's was posted on Auction America's website, provided to potential bidders, and displayed during the auction.  (Id. at 195-96.)  The Painting's ultimate purchaser received the Christie's letter prior to the auction.  (Ex. TC-5.)  After bidding for the Painting opened at $25,000, competitive bids resulted in a sale price of $75,000.  (5/9/16 Tr. at 165-66.)  The sale was concluded on May 14, 2014, and the Trustee filed a report of the sale on June 18, 2014.  (Adv. D.I. 129.)

On July 18, 2014, the Debtor filed a Motion to Compel Reimbursement in the above adversary proceeding.  (Adv. D.I. 131.)  The Motion seeks to surcharge the Trustee for alleged

4

estate losses resulting from a commercially unreasonable sale of the Painting.  An evidentiary hearing on the Motion was held on May 9 and 10, 2016.  The Court took the matter under advisement and directed post-trial briefing.  Final briefs were submitted on June 9 and 10, 2016.  (Adv. D.I. 259 & 260.)  The matter is ripe for decision.

II.  JURISDICTION

The Court has core jurisdiction over this contested matter. 28 U.S.C. §§ 1334, 157(b)(2)(O).

III.  DISCUSSION

A.  Legal Standard

Both the Debtor and the Trustee fashion their arguments within the four-part business judgment test applied when evaluating a sale of a debtor's assets outside the ordinary course of business under section 363(b).  In re Delaware & Hudson Railway Co., 124 B.R. 169, 176 (D. Del. 1991).  However, the sale in this case has already been approved, and the Debtor is not asking the Court to void the sale or return the Painting. Instead, the Debtor is seeking to hold the Trustee personally liable for the Trustee's decision to sell the Painting through Auction America.  There are several layers of analysis the Court must consider before addressing the business judgment rule.

5

B.   Trustee's Personal Liability

Although not clearly articulated, the essence of the Debtor's argument is that the Trustee breached his fiduciary duties by conducting a flawed sale of the Painting. Specifically, the Debtor contends that the Trustee breached his duties by: (i) retaining an auctioneer that was neither authorized to sell nor capable of properly marketing the Painting, and (ii) selling the Painting despite purported provenance-related issues.

1.   Immunity

Although not explicitly raised as a defense, the Court must first consider whether the Trustee is immune from the Debtor's breach of fiduciary duty claims. Chapter 7 trustees are generally afforded absolute immunity for actions taken pursuant to a court order. Phoenician Mediterranean Villa, LLC v. Swope (In re J & S Properties, LLC), 545 B.R. 91, 103 (Bankr. W.D. Pa. 2015) (citations omitted), aff'd sub nom. Phoenician Mediterranean Villa, LLC v. Swope, No. CV 3:15-268, 2016 WL 4046803 (W.D. Pa. July 27, 2016). To have immunity, the Trustee must establish that: (1) the trustee's acts were within the scope of his or her authority; (2) the debtor had notice of the trustee's proposed acts; (3) the trustee candidly disclosed the proposed acts to the bankruptcy court; and (4) the bankruptcy court approved the trustee's proposed acts. In re Summit Metals,

6

Inc., 477 B.R. 484, 501 (Bankr. D. Del. 2012) (citing Harris v. Wittman (In re Harris), 590 F.3d 730, 742 (9th Cir. 2009)). See also LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("[A] trustee acting with the explicit approval of a bankruptcy court is entitled to absolute immunity, as long as there has been full and frank disclosure to creditors and the court.").

The Debtor argues that the Trustee was required (but failed) to disclose to the Court the provenance-related issues identified by Christie's. If the Debtor's assertion is correct, the Trustee's actions would not be protected by absolute immunity. Mailman Steam, 169 F.3d at 8. In this case, for each asset sale, the Sale Order required the Trustee to file and serve a sale notice containing "any . . . information material to the sale or a description of where such information can be obtained by an interested purchaser." (Adv. D.I. 26.) The Debtor contends that Christie's provenance-related concerns were material to the sale and required disclosure to the Court.

The Court disagrees. The provenance-related issues did not reach the level of materiality necessitating disclosure to the Court; it was enough that it was disclosed to potential buyers. Christie's research did not constitute a legal conclusion and only represented its preliminary (and inconclusive) findings. Moreover, the Trustee did provide the letter from Christie's to

7

Auction America, which provided it to all potential bidders, including the Painting's eventual buyer. (5/9/16 Tr. at 151; Ex. TC-5.) Accordingly, the Court finds that the Trustee provided adequate disclosure of the provenance-related issues. Therefore, the Court concludes that the Trustee is afforded absolute immunity from personal liability because he acted pursuant to a court order.

    2.    <u>Fiduciary Duty</u>

Even if the Trustee did not have absolute immunity, the Debtor's claims against the Trustee would still fail. When a chapter 7 trustee is not afforded absolute immunity, the analysis shifts to whether the trustee breached a fiduciary duty to a beneficiary of the estate. <u>See</u> <u>Mosser v. Darrow</u>, 341 U.S. 267, 274 (1951) (holding that a bankruptcy trustee may be held personally liable for breaches of fiduciary duty); <u>Mailman Steam</u>, 196 F.3d at 7 (citing <u>Sherr v. Winkler</u>, 552 F.2d 1367, 1375 (10th Cir. 1977) (holding that a bankruptcy trustee is subject to personal liability for breaches of fiduciary duty when the trustee's actions are not protected by immunity)).

While courts all recognize a beneficiary's ability to sue a trustee who does not have absolute immunity, they differ on the appropriate level of culpability required to hold a trustee personally liable. <u>Mailman Steam</u>,196 F.3d at 7. <u>See also</u> Elizabeth H. McCullough, <u>Bankruptcy Trustee Liability: Is There A</u>

8

Method in the Madness?, 15 Lewis & Clark L. Rev. 153 (2011) (discussing different legal standards applied to actions seeking to hold bankruptcy trustees personally liable).

In Mosser, the Supreme Court held that a bankruptcy trustee may be held personally liable to a beneficiary for an intentional breach of fiduciary duty. Mosser, 341 U.S. at 272. However, the Court in Mosser did not address a trustee's potential liability when lesser levels of culpability are proven (i.e., negligence or gross negligence). Id. See also McCullough, 15 Lewis & Clark L. Rev. at 154-55. Consequently, courts have applied differing standards. Some courts hold trustees personally liable for only willful and deliberate violations. In re Chicago Pacific Corp., 773 F.2d 909, 925 (7th Cir. 1985); Ford Motor Credit Co. v. Weaver, 680 F.2d 451, 461 (6th Cir. 1982); Sherr v. Winkler, 552 F.2d 1367, 1375 (10th Cir. 1977). Others hold trustees liable for grossly negligent conduct. Dodson v. Huff (In re Smyth), 207 F.3d 758, 762 (5th Cir. 2000). Still others only require a showing of mere negligence to hold a trustee personally liable. See Mailman Steam, 196 F.3d at 7; In re Gorski, 766 F.2d 723, 727 (2d Cir. 1985); Hall v. Perry (In re Cochise College Park, Inc.), 703 F.2d 1339, 1357 (9th Cir. 1983); Quinn v. Fidelity & Deposit Co. of Maryland (In re Sturm), 121 B.R. 443, 448 (Bankr. E.D. Pa. 1990).

The Third Circuit has yet to adopt any of these standards.

9

Even if the Court were to adopt the negligence standard -- which affords chapter 7 trustees the least protection -- the Court concludes that the Trustee's conduct in this case still would not constitute a breach of fiduciary duty.

       3.    <u>Duty and Breach</u>

The duty to maximize the value of the estate is central to a trustee's fiduciary role. <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 394 (3d Cir. 1996). However, a chapter 7 trustee will not always be able to obtain the absolute maximum from each sale. To find the perfect buyer for each asset would require a considerable amount of the trustee's time and estate resources. However, section 704 of the Code requires that a trustee act "as expeditiously as is compatible with the best interests of the parties . . . ." 11 U.S.C. § 704(a)(1); <u>Hutchinson</u>, 5 F.3d at 753-54. As such, a trustee is required to balance the objective of value maximization with the need for minimization of costs. <u>Hutchinson</u>, 5 F.3d at 754.

Moreover, a trustee is not negligent and will not be held personally liable for "acts taken as a matter of business judgment in accordance with [a] statutory or other duty . . . ." <u>Smith v. Silverman (In re Smith)</u>, 645 F.3d 186, 191 (2d Cir. 2011) (citations omitted). <u>See also</u> <u>Mosser</u>, 341 U.S. at 274 ("Courts are quite likely to protect trustees against heavy liabilities for disinterested mistakes in business judgment.").

10

Although part of his argument is under section 363(b), which is not applicable here, the Debtor does assert that the Trustee's decision to sell the Painting through Auction America did not represent a sound exercise of business judgment. The Trustee disagrees and contends that he acted prudently following Christie's unwillingness to auction the Painting.

In this case, the Painting sat in Christie's possession for almost three years while Christie's researched its provenance and ultimately decided it could not sell the Painting. The Trustee then properly exercised his judgment in entrusting the sale of the Painting to Auction America, an auctioneer already retained by the Trustee with a proven record.[3] The Court finds that the Trustee's decision to sell the Painting through Auction America was an exercise of his business judgment and not negligent under any standard.

4. <u>Causation and Harm</u>

Even if the Debtor could show that the Trustee's conduct was negligent, he fails to demonstrate any injury caused by that conduct. The Debtor alleges that the Trustee's negligence resulted in a loss to the estate of at least $925,000. He bases this figure on a $1 million insurance policy he secured for the

---

[3] Auction America had sold another painting belonging to the Debtor, which was first at Christie's. (5/10/16 Tr. at 11-12.) At Christie's suggestion, the Trustee sold that painting through Auction America and was able to realize a sale price greater than Christie's estimates. (<u>Id.</u> at 12-14.)

Painting in 2007. (Ex. JP-13.) Alternatively, the Debtor asserts that the Painting is worth at least $500,000, the amount he paid for the Painting.

The Trustee responds that the value for which the Debtor bought or insured the Painting does not constitute an appraisal or evidence of the Painting's fair market value. Instead, the Trustee contends that the final sale price obtained from a properly marketed public auction is the best evidence of the Painting's value. Additionally, the Trustee asserts that Christie's preliminary estimate of the range of the Painting's value, $70,000 - $100,000, provides further evidence that the fair market value was obtained from the Painting's sale (at $75,000).

Because the Painting was sold through a properly marketed auction, and because the Painting's final sale price was within the range of Christie's estimates, the Court concludes that the Debtor was not harmed by the sale of the Painting. Therefore, even if the Court were to conclude that the Trustee breached his fiduciary duty, the Debtor's claim would still fail because he has not proven any damages.

IV. CONCLUSION

For the reasons set forth above, the Court will deny the Debtor's Motion to Compel Reimbursement.

An appropriate Order follows.

Dated: September 7, 2016                BY THE COURT:

*[signature]*
Mary F. Walrath
United States Bankruptcy Judge